# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-2896

_____

Children's Health Care, doing business as Children's Hospitals and Clinics of
Minnesota; Gillette Children's Specialty Healthcare

*Plaintiffs - Appellees*

v.

Centers for Medicare and Medicaid Services; Seema Verma, Administrator of the
Centers for Medicare and Medicaid Services, in her official capacity; Alex M.
Azar, II, Secretary of Health and Human Services, in his official capacity

*Defendants - Appellants*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: June 13, 2018
Filed: August 20, 2018

_____

Before WOLLMAN, ARNOLD, and KELLY, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

The Centers for Medicare and Medicaid Services; Seema Verma, the Centers'
Administrator; and Alex M. Azar, II, Secretary of Health and Human Services,

(collectively, the Secretary), appeal the district court's[1] partial grant of summary judgment for Children's Health Care[2] and Gillette Children's Specialty Healthcare (collectively, Children's Hospitals). The Secretary also challenges the district court's decision to vacate a Medicaid policy—Frequently Asked Question 33—which explained how to calculate a hospital's uncompensated medical care costs. We affirm.

The federal government and individual states administer the Medicaid program, which provides medical care to individuals "whose income and resources are insufficient to meet the costs of necessary medical services." See 42 U.S.C. § 1396-1. Each state submits a plan explaining how it will provide medical care to Medicaid patients, and if the Secretary for Health and Human Services approves the plan, the state may receive federal funds. Id. The cost of treating Medicaid patients, however, exceeds Medicaid's resources. As a result, Children's Hospitals assert that they receive $0.57 to $0.70 on every dollar spent providing Medicaid care, resulting in multimillion dollar losses each year. To help ease such financial strain, Congress authorized Disproportionate Share Hospital Payments (Hospital Payments), which allow states to provide additional funds to hospitals serving large numbers of Medicaid patients. See 42 U.S.C. § 1396a(a)(13)(A)(iv).

Congress subsequently limited Hospital Payments to the "costs incurred during the year of furnishing hospital services." 42 U.S.C. § 1396r-4(g)(1)(A).[3] In 2008, the

---

[1]The Honorable Wilhelmina M. Wright, United States District Judge for the District of Minnesota.

[2]Children's Health Care does business as Children's Hospitals and Clinics of Minnesota.

[3]The statute states in part:

A payment adjustment during a fiscal year shall not be considered to be

Secretary promulgated the following formula for calculating "[t]otal annual uncompensated care costs:"

> The total annual uncompensated care cost equals the total cost of care for furnishing inpatient hospital and outpatient hospital services to Medicaid eligible individuals and to individuals with no source of third party coverage for the hospital services they receive less the sum of regular Medicaid FFS rate payments, Medicaid managed care organization payments, supplemental/enhanced Medicaid payments, uninsured revenues, and Section 1011 payments for inpatient and outpatient hospital services.

42 C.F.R. § 447.299(c)(16) (2009).[4]  Under this formula, a hospital calculates the total cost of providing medical care to Medicaid eligible patients and uninsured patients.[5]  From that total, the hospital subtracts payments received from Medicaid,

---

consistent with subsection (c) of this section with respect to a hospital if the payment adjustment exceeds the costs incurred during the year of furnishing hospital services (as determined by the Secretary and net of payments under this subchapter, other than under this section, and by uninsured patients) by the hospital to individuals who either are eligible for medical assistance under the State plan or have no health insurance (or other source of third party coverage) for services provided during the year.

[4]The Secretary amended the relevant language of the controlling regulation—42 C.F.R. § 447.299(c)—on June 2, 2017.  Children's Hospitals' complaint challenges the regulation as it existed before the amendment.  The current regulation is not at issue in this case, and we make no legal determinations regarding it.

[5]The Secretary advances a strained reading of § 447.299(c)(9)-(11), which uses language similar to § 447.299(c)(16).  In essence, the Secretary argues that the words "total cost of care for furnishing . . . hospital services," account for payments from Medicaid and private insurance in radically different manners. Nothing in the regulation or the underlying statutes indicates that those words operate in that way.

payments by uninsured patients, and payments under Section 1011.[6]

Although the language of the regulation may appear comprehensive, it does not state that private insurance payments should be deducted when calculating the "total annual uncompensated care costs" for Medicaid eligible individuals.[7] To address this issue, the Secretary posted an online set of Frequently Asked Questions regarding § 447.299. Question 33—which was not subject to notice and comment procedures under the Administrative Procedures Act—explained that "hospitals should [] offset both Medicaid and third-party revenue associated with the Medicaid eligible day against the costs for that day to determine any uncompensated amount." Question 33 requires hospitals to include private insurance payments when calculating "uncompensated care costs." The district court determined that because Question 33 constituted a legislative rule that was subject to notice and comment procedures, the Secretary was without authority to adopt it as an interpretative rule.

We review *de novo* whether an agency's promulgated rule is legislative or interpretative. Iowa League of Cities v. EPA, 711 F.3d 844, 872 (8th Cir. 2013).

_____

one set of words should simultaneously have two different, opposing meanings. We thus decline to adopt this interpretation.

[6]Section 1011 payments dealt with emergency health services provided to undocumented aliens. These payments are not relevant here. Medicare Prescription Drug, Improvement, and Modernization Act of 2003, Pub. L. No. 108-173, § 1011, 117 Stat. 2066, 2432-35.

[7]Some children may have private insurance coverage through their parents and be eligible for Medicaid because they have a qualifying disability. See 42 U.S.C. § 1396a(a)(10)(A)(i)(II), (ii)(I). When this dual eligibility occurs, the insurance company covers the insured's medical costs, and Medicaid covers any deficiency between the insurance company's coverage and Medicaid's standard payment. The Secretary asserts that, in practice, this results in Medicaid routinely paying nothing.

When reviewing an agency's actions, we will "hold unlawful and set aside" any action that is "without observance of procedure required by law." 5 U.S.C. § 706(2)(D). Under 5 U.S.C. § 553(b) and (c), "[a]gencies must conduct 'rule making' in accord with the [Administrative Procedure Act's] notice and comment procedures." Iowa League of Cities, 711 F.3d at 855 (citing 5 U.S.C. § 553(b), (c)). This requirement applies to all new legislative rules but excludes interpretative rules and general statements of policy. Id. (citations omitted). "Whether or not a binding pronouncement is in effect a legislative rule that should have been subjected to notice and comment procedures thus depends on whether it substantively amends or adds to, versus simply interpreting the contours of, a preexisting rule." Id. at 873 (citing U.S. Telecomm. Ass'n v. FCC, 400 F.3d 29, 34-35 (D.C. Cir. 2005)). "Expanding the footprint of a regulation by imposing new requirements, rather than simply interpreting the legal norms Congress or the agency itself has previously created, is the hallmark of legislative rules." Id. (citations omitted).

The Secretary argues that Question 33 is an interpretative rule because it merely clarifies and explains how the existing law applies to a particular situation. The Secretary compares Question 33 to the "informal Medicare reimbursement guideline" in Shalala v. Guernsey Memorial Hospital, 514 U.S. 87, 90 (1995), in which the Supreme Court upheld a reimbursement guideline that explained the Secretary's decision to depart from generally accepted accounting principles when amortizing bond defeasance losses. Id. at 101. The Court reasoned in part that although the regulations required the use of "[s]tandardized definitions, accounting, statistics, and reporting practices," the reimbursement guideline did "not amount to a substantive change to the regulations" because the Secretary was not required to "address every conceivable question" that might arise "in the process of determining equitable reimbursement." Id. at 92, 96, 101. The Secretary was thus free to distinguish between hospital accounting practices and reimbursement practices. Id. 92-95. The Secretary argues that Question 33, like the reimbursement guideline in

Shalala, merely clarifies what is already in the regulation and its preamble.[8] The Secretary asserts that the words "uncompensated" and "unreimbursed" necessarily require Children's Hospitals to include private insurance payments when calculating their eligibility for Hospital Payments. We disagree.

Like the district court, we conclude that by imposing new reporting requirements for private insurance payments, Question 33 expanded the footprint of § 447.299 and thus constituted a substantive change in the regulation. As noted by the Fourth Circuit Court of Appeals, Question 33 is a legislative rule, in part, because it "does not derive from the [underlying] statute or the 2008 rule." Children's Hosp. of the King's Daughters, Inc. v. Azar, -- F.3d --, 2018 WL 3520399 (4th Cir. July 23, 2018). No authority cited by the Secretary—other than Question 33—addresses private insurance payments. Unlike the general regulations at issue in Shalala, § 447.299 has specific language explicitly stating what payments must be deducted from each hospital's "total cost of care." The preamble that the Secretary relies on defines "uncompensated care costs" as "the costs incurred by that hospital in furnishing services during the year to Medicaid patients and the uninsured, less other Medicaid payments made to the hospital, and payments made by uninsured patients." 73 Fed. Reg. at 77,904. The Secretary's own definition of "uncompensated care costs" does not include private insurance payments. In essence, the Secretary asks us to read substantive changes into the regulation under the guise of interpretation.

---

[8]The 2008 preamble states in part:

[W]e believe the costs attributable to dual eligibles [for Medicare and Medicaid] should be included in the calculation of the uncompensated costs of serving Medicaid eligible individuals. But in calculating those uncompensated care costs, it is necessary to take into account both the Medicare and Medicaid payments made, since those payments are contemplated under Title XIX.

73 Fed. Reg. at 77,912.

We decline to do so.

Furthermore, assuming that Congress delegated the Secretary the authority to enact Question 33—an issue we do not now decide—the use of "expressly delegated authority" leads the courts to "generally treat the agency action as legislative, rather than interpretive, rulemaking." Children's Hosp. of the King's Daughters, Inc., -- F.3d at -- (citing Iowa League of Cities, 711 F.3d at 873); see also N.H. Hosp. Ass'n v. Azar, 887 F.3d 62, 71 (1st Cir. 2018) (same). As noted by the First Circuit Court of Appeals, this general rule is appropriate here because Rule 33 did not rely on an "interpretive methodology," but "looks to us more as if the Secretary is using delegated power to announce a new policy out of whole cloth, rather than engaging in an interpretive exercise." N.H. Hosp. Ass'n, 887 F.3d at 72. For these reasons, we join the First and Fourth Circuits in concluding that Question 33 is a legislative rule that was not adopted in accordance with the procedure required by law and thus must be set aside, notwithstanding the Secretary's policy arguments to the contrary. N.H. Hosp. Ass'n, 887 F.3d at 70, 77; Children's Hosp. of the King's Daughters, Inc., -- F.3d at --; 5 U.S.C. § 706(2)(D).

The judgment is affirmed.

_____