# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued April 9, 2019          Decided August 13, 2019

No. 18-5135

CHILDREN'S HOSPITAL ASSOCIATION OF TEXAS, ET AL.,
APPELLEES

v.

ALEX MICHAEL AZAR, II, IN HIS OFFICIAL CAPACITY,
SECRETARY,
DEPARTMENT OF HEALTH AND HUMAN SERVICES, ET AL.,
APPELLANTS

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:17-cv-00844)

———

*Tara S. Morrissey*, Attorney, United States Department of Justice, argued the cause for the appellants. *Mark B. Stern* and *Samantha L. Chaifetz*, Attorneys, *Robert P. Charrow*, General Counsel, United States Department of Health & Human Services, *Janice L. Hoffman*, Associate General Counsel, *Susan M. Lyons*, Deputy Associate General Counsel, and *David L. Hoskins*, Attorney, were with her on brief.

*David B. Salmons* argued the cause for the appellees. *Geraldine E. Edens*, *Michael E. Kenneally*, and *Susan Feigin Harris* were with him on brief. *Christopher H. Marraro* entered an appearance.

*Daniel G. Jarcho* and *Michael H. Park* were on brief for the *amicus curiae* Children's Hospital Association in support of the appellees and in support of affirmance.

Before: HENDERSON and ROGERS, *Circuit Judges*, and SENTELLE, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

KAREN LeCRAFT HENDERSON, *Circuit Judge*:   Under the Medicaid Act (Act), the federal government provides each state funds for distribution to hospitals that serve a disproportionate number of low-income patients. *See* 42 U.S.C. § 1396-1. A state distributes the funds through Disproportionate Share Hospital (DSH) payments. *See id.* § 1396r-4(b), (c). A hospital may not receive a DSH payment that exceeds its "costs incurred" in furnishing hospital services to low-income patients. *Id.* § 1396r-4(g)(1)(A). "Costs incurred" are, *inter alia*, "determined by the Secretary" of the United States Department of Health and Human Services (Secretary). *Id.* In 2017, the Secretary promulgated a regulation defining "costs incurred." Medicaid Program; Disproportionate Share Hospital Payments–Treatment of Third Party Payers in Calculating Uncompensated Care Costs, 82 Fed. Reg. 16,114, 16,122 (Apr. 3, 2017) ("2017 Rule"). The plaintiffs, a group of children's hospitals that receive DSH payments, argue that the regulatory definition is contrary to the Medicaid Act and otherwise arbitrary and capricious. The district court agreed that the definition is inconsistent with the Act and vacated the 2017 Rule. *Children's Hosp. Ass'n of Tex. v. Azar*, 300 F. Supp. 3d 190 (D.D.C. 2018). We now reverse.

3

## I. Background

"Medicaid is a cooperative federal-state program through which the Federal Government provides financial assistance to States so that they may furnish medical care to needy individuals." *Wilder v. Va. Hosp. Ass'n*, 496 U.S. 498, 502 (1990). States implement their own Medicaid plans, subject to the federal government's review and approval. *See* 42 U.S.C. § 1396a. Treating the indigent proves costly even for hospitals that receive Medicaid payments. Indeed, not all hospital services are covered by Medicaid; not all costs associated with covered services are allowed by Medicaid; and Medicaid does not fully reimburse hospitals for all allowable costs associated with covered services. Recognizing this, the Congress authorizes supplemental payments ("DSH payments") to hospitals that serve a disproportionate share of low-income patients ("DSH hospitals"). 42 U.S.C. § 1396a(13)(A)(iv) (requiring that Medicaid payment rates "take into account (in a manner consistent with section 1396r-4 of this title) the situation of hospitals which serve a disproportionate number of low-income patients with special needs"); 42 U.S.C. § 1396r-4 (entitled "Adjustment in payment for inpatient hospital services furnished by disproportionate share hospitals"). There is both a state-specific and a hospital-specific limit on DSH payments. The state-specific limit—not at issue in this case—dictates that all DSH payments to DSH hospitals within a single state must be drawn from the same pool of federal funds. *See* 42 U.S.C. § 1396r-4(f). The hospital-specific limit, which is at issue in this case, dictates that a DSH payment to a single hospital cannot exceed:

> [T]he costs incurred during the year of furnishing hospital services (as determined by the Secretary and net of payments under this subchapter, other than under this section, and by

> uninsured patients) by the hospital to individuals who either are eligible for medical assistance under the State plan or have no health insurance (or other source of third party coverage) for services provided during the year.

42 U.S.C. § 1396r-4(g)(1)(A). This sentence—although not the picture of clarity—establishes a few matters clearly. A DSH hospital cannot receive a DSH payment that exceeds its "costs incurred during the year of furnishing hospital services" to Medicaid-eligible and uninsured individuals. The Secretary is assigned the task of determining "costs incurred." And "costs incurred" are "net of payments under this subchapter, other than under this section, and by uninsured patients"; in other words, payments made by Medicaid and uninsured individuals *must be* subtracted out when calculating a hospital's "costs incurred." The dispute here is about whether payments made by Medicare and private insurers *should also be* subtracted out.

In 2003, the Congress enacted legislation requiring states to submit annual reports and independent certified audits regarding their DSH programs. *See* 42 U.S.C. § 1396r-4(j). The reports must identify which hospitals receive DSH payments and the audits must verify that the DSH payments comply with the statutory requirements. *Id.*

In 2008, the Centers for Medicare & Medicaid Services (CMS), using the authority delegated it by the Secretary, promulgated a regulation implementing the reporting and auditing requirements. Medicaid Program; Disproportionate Share Hospital Payments, 73 Fed. Reg. 77,904 (Dec. 19, 2008) ("2008 Rule"). The 2008 Rule provided that each state must report to CMS the cost of each DSH hospital's "Total Medicaid Uncompensated Care." *Id.* at 77,950 (codified at 42 C.F.R. § 447.299(c)(11)). The 2008 Rule did not state whether third-party payments, including payments by Medicare and private

insurers, were meant to be included in calculating the amount. *See id.* Three courts of appeals concluded from this silence that the 2008 Rule left uncertain whether these payments should be considered. *See Children's Health Care v. Ctrs. for Medicare & Medicaid Servs.*, 900 F.3d 1022, 1025 (8th Cir. 2018); *Children's Hosp. of the King's Daughters, Inc. v. Azar*, 896 F.3d 615, 621 (4th Cir. 2018); *N.H. Hosp. Ass'n v. Azar*, 887 F.3d 62, 75 (1st Cir. 2018). One court of appeals concluded that the 2008 Rule made clear that these payments *should not* be considered. *See Tenn. Hosp. Ass'n v. Azar*, 908 F.3d 1029, 1043–44 (6th Cir. 2018).

In 2010, CMS posted a Frequently Asked Questions document on its website clarifying that payments made by Medicare and private insurers *should* be included. *See* CMS, *Additional Information on the DSH Reporting and Audit Requirements*, FAQs 33 and 34 (2010), https://www.medicaid.gov/medicaid/finance/downloads/part-1-additional-info-on-dsh-reporting-and-auditing.pdf. A number of hospitals brought suit, arguing that the FAQs posting was invalid because it represented a substantive policy change without notice and an opportunity for public comment. In response, CMS issued a notice of proposed rulemaking and subsequently promulgated the 2017 Rule. The 2017 Rule establishes that payments by Medicare and private insurers are to be included in calculating a hospital's "costs incurred." 82 Fed. Reg. at 16,122 (codified at 42 C.F.R. § 447.299(c)(10)). It provides, *inter alia*, "costs . . . [a]re defined as costs net of third-party payments, including, but not limited to, payments by Medicare and private insurance." *Id.* The Secretary explains that considering payments by Medicare and private insurers "best fulfills the purpose of the DSH statute," is "necessary to ensure that limited DSH resources are allocated to hospitals that have a net financial shortfall in serving Medicaid patients" and "is necessary to facilitate the Congressional directive . . .

of limiting the DSH payment to a hospital's uncompensated care costs." *Id.* at 16,116, 16,118. He maintains that the 2017 Rule did not effect a legal change but instead continued the preexisting policy. *Id.* at 16,119.

The plaintiffs are four children's hospitals in Minnesota, Virginia and Washington and an association representing eight children's hospitals in Texas. They claim the 2017 Rule violates the Administrative Procedure Act because it exceeds the Secretary's authority under the Medicaid Act and is the product of arbitrary and capricious reasoning. *See* 5 U.S.C. § 706(2)(A), (C). The district court entered summary judgment for the plaintiffs, holding that the Rule "is inconsistent with the plain language of the Medicaid Act," which "clearly indicates which payments can be subtracted from the total costs incurred during the year by hospitals" and "nowhere mentions subtracting other third-party payments made on behalf of Medicaid-eligible patients from the total costs incurred." *Children's Hosp. Ass'n of Tex.*, 300 F. Supp. 3d at 205, 207. Having held the 2017 Rule invalid under § 706(2)(C) ("*ultra vires*" prohibition), the district court did not reach the plaintiffs' § 706(2)(A) challenge ("arbitrary and capricious" prohibition). *Id.* at 205. The district court ultimately vacated the 2017 Rule and the Secretary timely appealed. *Id.* at 210–11. Our review is *de novo. See Ark Initiative v. Tidwell*, 816 F.3d 119, 126–27 (D.C. Cir. 2016).

## II. Analysis

### A. Exceeds Statutory Authority

The plaintiffs first challenge the Rule as exceeding the Secretary's authority under the Medicaid Act, in violation of 5 U.S.C. § 706(2)(C). The familiar *Chevron* framework guides our review. *See Ass'n of Private Sector Colls. & Univs. v. Duncan*, 681 F.3d 427, 441 (D.C. Cir. 2012) ("Appellant's

claims that various provisions of the challenged regulations are 'in excess of statutory jurisdiction, authority, or limitations, or short of statutory right,' are reviewed under the well-known *Chevron* framework." (citation omitted) (quoting 5 U.S.C. § 706(2)(C))). "Under that framework, we ask whether the statute is ambiguous and, if so, whether the agency's interpretation is reasonable." *King v. Burwell*, 135 S. Ct. 2480, 2488 (2015). "This approach 'is premised on the theory that a statute's ambiguity constitutes an implicit delegation from Congress to the agency to fill in the statutory gaps.'" *Id.* (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 159 (2000)). Because the delegation at issue here is express rather than implied, *see* 42 U.S.C. § 1396r-4(g)(1)(A) ("[T]he costs incurred during the year of furnishing hospital services (*as determined by the Secretary . . .*) . . . ." (emphasis added)); *see also Transitional Hosps. Corp. of La. v. Shalala*, 222 F.3d 1019, 1025 (D.C. Cir. 2000) ("as determined by the Secretary" is "express delegation"), we have no need to search for statutory ambiguity. We skip straight to asking whether the Rule is reasonable. *See Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843–44 (1984) ("If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation. Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute."); *see also Transitional Hosps. Corp. of La.*, 222 F.3d at 1025 (if delegation is express "we are bound to uphold [the Secretary's] determination as long as she exercises [her] discretion in a reasonable way").

The plaintiffs offer four principal reasons the statute does not grant the Secretary authority to require that payments by Medicare and private insurers be considered in calculating a hospital's "costs incurred." *First*, the statute exclusively

specifies which payments can be considered. *Second*, the Rule renders superfluous the statute's specification that certain payments must be considered. *Third*, the Congress required consideration of third-party payments in a different statutory provision but not in the relevant provision. *Fourth*, the statute plainly distinguishes costs and payments. We reject all four arguments.[1]

*First*, we disagree with the plaintiffs' argument that the statute exclusively specifies which payments can be considered in calculating "costs incurred." *See* Plaintiffs' Br. at 58; *Children's Hosp. Ass'n of Tex.*, 300 F. Supp. 3d at 207 ("On its face, the statute clearly indicates which payments can be subtracted from the total costs incurred during the year by hospitals: (1) 'payments under this subchapter,' *i.e.*, payments made by Medicaid; and (2) payments made by uninsured patients. The statute nowhere mentions subtracting other third-party payments made on behalf of Medicaid-eligible patients from the total costs incurred."). Although the statute establishes that payments by Medicaid and the uninsured *must* be considered, it nowhere states that those are the only payments that *may* be considered. To conclude otherwise, we would have to rely on the interpretive canon *expressio unius est exclusio alterius*, which means "expressing one item of [an] associated group or series excludes another left unmentioned." *Chevron U.S.A. Inc. v. Echazabal*, 536 U.S. 73, 80 (2002) (alteration in original) (quoting *United States v. Vonn*, 535 U.S. 55, 65 (2002)). But that canon has been called a "feeble helper in an administrative setting." *Adirondack Med. Ctr. v. Sebelius*, 740 F.3d 692, 697 (D.C. Cir. 2014) (quoting *Cheney R.R. Co. v. ICC*, 902 F.2d 66, 69 (1990)). And, in any setting, it "applies only when 'circumstances support[] a sensible inference that

---

[1] We have also considered and reject the plaintiffs' other arguments.

the term left out must have been meant to be excluded.'" *NLRB v. SW Gen., Inc.*, 137 S. Ct. 929, 940 (2017) (quoting *Echazabal*, 536 U.S. at 81); *see also Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 168 (2003) ("[W]e do not read the enumeration of one . . . to exclude the other unless it is fair to suppose that Congress considered the unnamed possibility and meant to say no to it."). There is reason to believe the Congress did not intend to exclude Medicare and private insurance payments from consideration. Indeed, the parties agree that the most common sources of payment for treating Medicaid-eligible and uninsured individuals are Medicaid and the uninsured. The Congress may have wanted to ensure that the most common sources of payment must be considered but at the same time allow the Secretary to decide whether less-common sources of payment should be as well. Especially in light of this plausible alternative explanation, we will not rely on the *expressio unius* canon to find that the statute exclusively specifies which payments can be considered in calculating "costs incurred." *See Indep. Ins. Agents of Am., Inc. v. Hawke*, 211 F.3d 638, 644 (D.C. Cir. 2000) ("[I]f there are other reasonable explanations for an omission in a statute, *expressio unius* may not be a useful tool.").

*Second*, we disagree with the plaintiffs' argument that the Rule renders superfluous the statute's specification that payments by Medicaid and the uninsured must be considered. *See* Plaintiffs' Br. 41–42; *Children's Hosp. Ass'n of Tex.*, 300 F. Supp. 3d at 207 ("To allow the Secretary to redefine 'costs' to net out a third category of payments—*i.e.*, 'third-party payments, including but not limited to, payments by Medicare and private insurance' . . .—would 'render the Congressional definition of payments in the very same clause superfluous.'" (quoting *Children's Hosp. of the King's Daughters, Inc. v. Price*, 258 F. Supp. 3d 672, 687 (E.D. Va. 2017))); *id.* ("[D]efendants' interpretation of the statute would render

portions of the statutory language superfluous."). The statute's specification that two forms of payment *must* be considered removes the Secretary's discretion as to those two forms of payment. But it does nothing to disturb the Secretary's discretion as to other forms of payment, which *may* be considered. *See Tenn. Hosp. Ass'n*, 908 F.3d at 1038 ("[T]he fact that certain payments must be deducted from costs does not mean that other payments cannot be."); *N.H. Hosp. Ass'n*, 887 F.3d at 66 ("Congress identified two specific sources of payment that must be offset against total costs, but otherwise simply stated that 'costs incurred' are 'as determined by the Secretary.'").

*Third*, we reject the plaintiffs' argument that we should infer from the Congress's requiring consideration of third party payments under 42 U.S.C. § 1396r-4(g)(2)(A)—a provision that, before 1995, allowed certain hospitals to receive payments that exceeded their uncompensated costs—that it meant to prohibit consideration of third party payments under § 1396r-4(g)(1)(A). Plaintiffs' Br. 34–35. This argument is based on the so-called "*Russello* presumption—that the presence of a phrase in one provision and its absence in another reveals Congress' design." *City of Columbus v. Ours Garage & Wrecker Serv., Inc.*, 536 U.S. 424, 435–36 (2002) (citing *Russello v. United States*, 464 U.S. 16 (1983)). But that presumption "grows weaker with each difference in the formulation of the provisions under inspection." *Id.* at 436. Because sections (g)(1)(A) and (g)(2)(A) are fundamentally different, we find the plaintiffs' argument unpersuasive. *See Tenn. Hosp. Ass'n*, 908 F.3d at 1039 ("There is no tension, however, in Congress *requiring* third-party payment deductions in subsection (g)(2)(A) and *allowing* third-party payment deductions in subsection (g)(1)(A). The DSH payments provided for in (g)(2)(A) are above and beyond those mandated by (g)(1)(A); it therefore makes sense for Congress

to impose a hard limit on the ceiling of (g)(2)(A) funds—i.e., no more than 200% of the costs of serving Medicaid-eligible patients, less payments from Medicaid, uninsured patients, and 'third party payors'—while giving CMS more discretion to calibrate the appropriate cap on the 'standard' DSH payments discussed in (g)(1)(A).").

*Fourth*, we disagree with the plaintiffs' argument that the statute plainly distinguishes between costs and payments such that payments can never be considered in calculating "costs incurred." *See* Plaintiffs' Br. at 26, 30, 33, 40, 57. The statute establishes that a hospital's DSH payment cannot exceed its "costs incurred during the year of furnishing hospital services (as determined by the Secretary and net of payments under this subchapter, other than under this section, and by uninsured patients)." 42 U.S.C. § 1396r-4(g)(1)(A). Both of the parenthetical's adjoining phrases modify "costs incurred"— that is, "costs incurred" are both "as determined by the Secretary" *and* "net of payments under [Medicaid] and by uninsured patients." *Id.* In other words, the statute *requires* that some payments be considered in calculating a hospital's "costs incurred." The argument that the statute separates costs and payments therefore flies in the teeth of the statutory text.

Contrary to the plaintiffs' contention, we believe the 2017 Rule is consistent with the statute's context and purpose, both of which suggest DSH payments are meant to assist those hospitals that need them most by covering only those costs for which DSH hospitals are in fact uncompensated. *See* 42 U.S.C. § 1396r-4(g)(1) (heading of provision at issue: "Amount of adjustment subject to uncompensated costs"); [2] 42 U.S.C. § 1396r-4(j)(2)(C) (requiring states to certify that "[o]nly the

---

[2] Headings, although "not commanding," "supply clues" about Congressional intent. *Yates v. United States*, 135 S. Ct. 1074, 1083 (2015).

uncompensated care costs of providing inpatient hospital and outpatient hospital services to individuals described in [(g)(1)(A)] are included in the calculation of the hospital-specific limits."); H.R. Rep. No. 103-111, at 211 (in enacting DSH payment limit, Congress noted "some States have made DSH payment[s] . . . to State psychiatric or university hospitals in amounts that exceed the net costs, and in some instances the total costs, of operating the facilities"); *Tenn. Hosp. Ass'n*, 908 F.3d at 1040 ("essence" of Congressional concern in enacting statute was "that hospitals were double dipping by collecting DSH payments to cover costs that had already been reimbursed"). By requiring the inclusion of payments by Medicare and private insurers, the 2017 Rule ensures that DSH payments will go to hospitals that have been compensated least and are thus most in need. Because the 2017 Rule is consistent with the statute, it does not violate § 706(2)(C).

## B. Arbitrary and Capricious

The plaintiffs next challenge the 2017 Rule as the product of arbitrary and capricious reasoning, in violation of 5 U.S.C. § 706(2)(A). A reviewing court "shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). An agency rulemaking is arbitrary and capricious "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicles Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

The plaintiffs first contend that "CMS has never acknowledged, let alone justified, its new Rule's departure

from the 2008 rule." Plaintiffs' Br. 27–28. We disagree. "Agencies are free to change their existing policies as long as they provide a reasoned explanation for the change." *Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2125 (2016). An agency need not provide a more detailed justification for a changed policy than it would for a brand-new policy. *Id.* But it must provide "a reasoned explanation . . . for disregarding facts and circumstances that underlay or were engendered by the prior policy." *Id.* at 2126 (quoting *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 516 (2009)). An "unexplained inconsistency" with an earlier position renders a changed policy arbitrary and capricious. *Id.* (quoting *Nat. Cable & Telecomm. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 981 (2005)).

There is no unexplained inconsistency with an earlier position here. To be clear, we agree with the plaintiffs that the 2017 Rule and the 2008 Rule establish different policies.[3] But it makes no difference. CMS explained why the statute's purposes are better fulfilled by a policy that requires consideration of payments by Medicare and private insurers

---

[3] The Secretary maintains that the 2017 Rule is consistent with the 2008 Rule and so does not establish a new policy. That argument has been rejected by four courts of appeals, all of which found the 2010 FAQs procedurally invalid because the policy established therein, which is the same policy established by the 2017 Rule, marked a departure from the policy established by the 2008 Rule without notice and an opportunity for public comment. *See Tenn. Hosp. Ass'n*, 908 F.3d at 1043 ("As three circuit courts and several district courts have now held, the payment-deduction policy elucidated in the FAQs and hinted at in the preamble to the 2008 rule seeks to amend, rather than merely clarify, the 2008 regulations." (citing *Children's Health Care*, 900 F.3d at 1026–27; *Children's Hosp. of the King's Daughters*, 896 F.3d at 623; *N.H. Hosp. Ass'n*, 887 F.3d at 74)). We agree with our sister circuits.

(the 2017 Rule) than one that does not (the 2008 Rule, as we interpret it):

> In light of the statutory requirement limiting DSH payments on a hospital-specific basis to uncompensated care costs, it is inconsistent with the statute to assist hospitals with costs that have already been compensated by third party payments. [The 2017] rule is designed to reiterate the policy and make explicit within the terms of the regulation that all costs and payments associated with dual eligible and individuals with a source of third party coverage must be included in calculating the hospital-specific DSH limit. This policy is necessary to ensure that only actual uncompensated care costs are included in the Medicaid hospital-specific DSH limit. And, because state DSH payments are limited to an annual federal allotment, this policy is also necessary to ensure that limited DSH resources are allocated to hospitals that have a net financial shortfall in serving Medicaid patients.

82 Fed. Reg. at 16,117. This explanation is more than sufficient to survive review under § 706(2)(A).

The plaintiffs also claim that the Secretary has not tied the 2017 Rule to the administrative record. According to their reading, the record shows that CMS reduces DSH payments to the plaintiff hospitals when it considers private insurance payments, notwithstanding "they have among the highest Medicaid inpatient utilization rates in their respective states and the highest net financial shortfalls in serving Medicaid patients." Plaintiffs Br. 65. The plaintiffs claim this outcome is inconsistent with the purpose of the 2017 Rule, which is "to

ensure that limited DSH resources are allocated to hospitals that have a net financial shortfall in serving Medicaid patients." 82 Fed. Reg. at 16,117.

Their argument is doubly flawed. For starters, "Medicaid inpatient utilization rates" are not mentioned in § 1396r-4(g)(1)(A). *See* 42 U.S.C. § 1396r-4(g)(1)(A). More importantly, the plaintiffs misstate which hospitals suffer a "net financial shortfall." Programs and services a hospital provides that are not paid for by Medicaid are *not* relevant to the shortfall calculation. *See* 42 U.S.C. § 1396r-4(j)(2)(C) ("Only the uncompensated care costs of providing inpatient hospital and outpatient hospital services to individuals described in paragraph [(g)(1)(A)] are included in the calculation of the hospital-specific limits under such subsection."). Indeed, the statute does not consider a hospital's *actual costs*; it considers only those costs that Medicaid pays for. *See* 82 Fed. Reg. at 16,118 ("Ancillary programs and services that hospitals provide to patients may be laudable, but they are not paid for by Medicaid because they are not costs associated with furnishing inpatient and outpatient hospital services."). Calculating "net financial shortfall" using only those costs that Medicaid pays for, no hospital that suffers a "net financial shortfall" will be denied a DSH payment. Thus, we disagree with the plaintiffs' argument that the Secretary has failed to tie the Rule to the record. Like their § 706(2)(C) challenge, their § 706(2)(A) challenge fails.

For the foregoing reasons, we reverse the judgment of the district court, reinstate the 2017 Rule and remand the case for further proceedings consistent with this opinion.

*So ordered.*