# United States Court of Appeals
## For the Eighth Circuit

_____

No. 18-1778
_____

Missouri Hospital Association

*Plaintiff - Appellee*

v.

Alex M. Azar, II, Secretary of Health and Human Services, et al.

*Defendants - Appellants*

_____

Appeal from United States District Court
for the Western District of Missouri - Jefferson City

_____

Submitted: April 17, 2019
Filed: November 4, 2019

_____

Before LOKEN, WOLLMAN, and STRAS, Circuit Judges.

_____

LOKEN, Circuit Judge.

"Disproportionate share hospitals" -- those that serve a disproportionate number of indigent patients -- receive supplemental Medicaid payments ("DSH payments") to help ensure their financial viability. See 42 U.S.C. § 1396r-4. DSH payments may not exceed a hospital's "costs incurred" in furnishing hospital services to eligible individuals "(as determined by the Secretary and net of [Medicaid] payments)." § 1396r-4(g)(1)(A). In a final rule promulgated in 2017 after notice and

comment rulemaking ("the 2017 Rule"), the Secretary of Health and Human Services defined "costs incurred" as "costs net of third-party payments, including, but not limited to, payments by Medicare and private insurance." 42 C.F.R. § 447.299(c)(10) (effective June 2, 2017).

The Missouri Hospital Association ("MHA"), whose members include many disproportionate share hospitals, commenced this action against the Secretary, The Centers for Medicare and Medicaid Services, and its Administrator (collectively, "the Secretary"), seeking a declaration and injunctive relief invalidating this part of the 2017 Rule. The district court granted summary judgment in favor of the MHA, concluding that the 2017 Rule was contrary to "unambiguous language of the statute explain[ing that] the only payments that offset a hospital's Medicaid costs are non-DSH Medicaid payments." The Secretary appeals. Reviewing *de novo*, we conclude that the 2017 Rule was a reasonable exercise of the Secretary's expressly delegated discretion to interpret this provision in the statute. Accordingly, we reverse.[1]

At issue is the hospital-specific limit on DSH payments. In 2003, Congress directed the Secretary to perform an annual audit of each DSH to verify that "[o]nly the uncompensated care costs of providing" services (known as the Medicaid shortfall) "are included in the calculation of the hospital-specific limit." 42 U.S.C. § 1396r-4(j)(2)(C). The statute at issue, 42 U.S.C. § 1396r-4(g)(1)(A), implements that mandate. As it is not a model of clarity, we set it out in full:

---

[1]MHA also challenged the Secretary's previous adoption of the same interpretation in published answers to Frequently Asked Questions ("FAQs"). In Children's Health Care v. Centers for Medicare & Medicaid Servs., 900 F.3d 1022, 1026-27 (8th Cir. 2018), we concluded this action was a legislative rule not adopted in accordance with Administrative Procedure Act requirements, but we reserved the issue of whether the Secretary had the authority to enact this interpretation through proper notice and comment rulemaking. Following our decision, the Secretary withdrew the relevant FAQ answers, so we vacate as moot this portion of the district court's summary judgment order.

**(g) Limit on amount of payment to hospital**
**(1) Amount of adjustment subject to uncompensated costs**
**(A) In general**

A payment adjustment during a fiscal year shall not be considered to be consistent with subsection (c) of this section with respect to a hospital if the payment adjustment exceeds the costs incurred during the year of furnishing hospital services (as determined by the Secretary and net of payments under this subchapter, other than under this section, and by uninsured patients) by the hospital to individuals who either are eligible for medical assistance under the State plan or have no health insurance (or other source of third party coverage) for services provided during the year. For purposes of the preceding sentence, payments made to a hospital for services provided to indigent patients made by a State or unit of local government within a State shall not be considered to be a source of third party payment.

In determining whether the Secretary's 2017 Rule exceeded his statutory authority, we begin with the familiar analysis of Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837 (1984). The first question is "whether Congress has directly spoken to the precise question at issue." If so, "the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Id. at 842-43. The first parenthetical in § 1396r-4(g)(1)(A) expressly delegates to the Secretary the determination of "costs incurred . . . of furnishing hospital services." When the Secretary acts within the scope of that express delegation, his "legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." Id. at 844; see 5 U.S.C. § 706(2).

MHA, while conceding that § 1396r-4(g)(1)(A) expressly delegates discretion to the Secretary, argues that it is discretion only to determine "costs incurred," whereas the statute unambiguously provides that the only "payments" that may reduce

the determination of "costs incurred" are Medicaid payments "other than under this section [non-DSH payments] and [payments] by uninsured patients."  MHA argues that Congress unambiguously mandated a specific formula:  Medicaid shortfall = Medicaid costs - *Medicaid* payments.

We agree with MHA's statutory analysis up to a point.  Section 1396r-4(g)(1)(A) does not delegate to the Secretary *unfettered* discretion to determine "costs incurred."  The statute's discretion-conferring parenthetical specifically directs the Secretary to offset Medicaid payments.  However, as the D.C. Circuit has noted, "[a]lthough the statute establishes that payments by Medicaid and the uninsured *must* be considered, it nowhere states that those are the only payments that *may* be considered."  Children's Hosp. Ass'n of Tex. v. Azar, 933 F.3d 764, 770 (D.C. Cir. 2019) (emphasis in original).  The final sentence of § 1396r-4(g)(1)(A) contains another limitation on the Secretary's discretion -- "payments made to a hospital for services provided to indigent patients made by a State or a unit of local government within a State shall not be considered to be a source of third party payment."  Contrary to MHA's argument, if the statute unambiguously prohibited the Secretary from considering any "payments" other than those included in the "net of payments" parenthetical, this sentence would be superfluous.

Moreover, we disagree with MHA and the district court that the terms "costs incurred" and "net of payments" have plain, unambiguous meanings.  The Supreme Court has noted that the term "costs" can have different technical meanings in different contexts.  "The fact is that without any better indication of meaning than the unadorned term, the word 'cost' in [47 U.S.C.] § 252(d)(1), as in accounting generally, is a 'chameleon,' a 'virtually meaningless' term.  As Justice Breyer put it in [a prior decision], words like 'cost' 'give ratesetting commissions broad methodological leeway' . . . ."  Verizon Commun's, Inc. v. F.C.C., 535 U.S. 467, 500 (2002).  Closer to the textual issue in this case, in Kindred Hospitals East, LLC v. Sebelius, we concluded that the Secretary was not arbitrary and capricious in treating

-4-

"pool payments" as expense refunds that reduced a hospital's "costs actually incurred" under 42 U.S.C. § 1395x(v)(1)(A). 694 F.3d 924, 928-29 (8th Cir. 2012).

MHA's interpretation of "costs" and "payments" is not plainly mandated by the structure of the first parenthetical in § 1396r-4(g)(1)(A). The statute does not isolate "as determined by the Secretary" in its own parenthetical, separating the Secretary's discretion to determine costs from the term specifying "net of" some payments. Instead, the entire parenthetical modifies the term "costs incurred." As the Secretary has acted within the scope of this express delegation, the 2017 Rule, a legislative regulation, must be "given controlling weight unless [it is] arbitrary, capricious, or manifestly contrary to the statute." Chevron, 467 U.S. at 844.

We conclude the Secretary's interpretation of "costs incurred" is reasonable in light of the statute's purpose and design. When Medicaid-eligible patients have third party coverage such as Medicare or private insurance, the third party insurer pays the hospital first, because Medicaid serves as the "payer of last resort." Congress has directed the Secretary to ensure that only "uncompensated care costs" are reimbursed. § 1396r-4(j)(2)(C). As the Secretary explained in promulgating the 2017 Rule:

> In light of the statutory requirement limiting DSH payments on a hospital-specific basis to uncompensated care costs, it is inconsistent with the statute to assist hospitals with costs that have already been compensated by third party payments. . . . This policy is necessary to ensure that only actual uncompensated care costs are included in the Medicaid hospital-specific DSH limit.

82 Fed. Reg. at 16,117. It is not arbitrary for the Secretary to construe "uncompensated costs" as "costs" net of third party reimbursements, even reimbursements that are called "payments." Accord Children's Hosp. Ass'n of Tex., 933 F.3d at 773-74; Tenn. Hosp. Ass'n v. Azar, 908 F.3d 1029, 1047 (6th Cir. 2018) (declaring the online interpretation procedurally invalid but upholding the Secretary's

substantive authority to adopt this interpretation). Like the "pool payments" treated as expense refunds in Kindred Hospitals, 694 F.3d 924, 928-29, third party payments by Medicare and by private insurers in fact reduce a hospital's "total amount of uncompensated care attributable to Medicaid inpatient and outpatient services." 42 C.F.R. § 447.299(c)(11). Under Missouri's plan, the State redistributes overpayments above a particular hospital's DSH annual limit proportionately among other DSH hospitals that are below their hospital-specific limits, redistributions that should benefit the most imperiled DSH members of the MHA.

The Opinion and Order of the district court dated February 9, 2018, and the Judgment dated March 27, 2018, are reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

STRAS, Circuit Judge, concurring in the judgment.

The court and I arrive at the same destination, but I would take a more direct route. Unwieldy as the statute may at first appear,[2] Congress unambiguously

---

[2]For ease of reference, the statute is reproduced in relevant part here:

A payment adjustment during a fiscal year [may not] exceed[] the costs incurred during the year of furnishing hospital services (as determined by the Secretary and net of payments under this subchapter, other than under this section, and by uninsured patients) by the hospital to individuals who either are eligible for medical assistance under the State plan or have no health insurance (or other source of third party coverage) for services provided during the year. For purposes of the preceding sentence, payments made to a hospital for services provided to indigent patients made by a State or a unit of local government within a State shall not be considered to be a source of third party payment.

42 U.S.C. § 1396r-4(g)(1)(A).

instructed the Secretary of Health and Human Services to "determine[]" the "costs incurred" from "furnishing hospital services" to Medicaid patients. 42 U.S.C. § 1396r-4(g)(1)(A). Based on a disagreement with the Secretary's decision to deduct insurance and Medicare payments from the calculation, the Missouri Hospital Association challenges his decision-making authority. My analysis begins and ends with the plain language of the statute.

The parties' dispute is straightforward: may the Secretary exclude from "costs incurred" those expenses that have been reimbursed by insurance companies and other third-party payors? The only possible answer under the statute is yes. Whatever ambiguity lies in the word "costs," *ante* at 4, is cleared up by the following word, "incurred." To incur a cost is to "sustain" it or be "liable or subject to" it. *The American Heritage Dictionary of the English Language* 891 (5th ed. 2016); *accord Webster's Third New International Dictionary* 1146 (2002). Hospitals have not sustained, and are not liable for, any costs that have been reimbursed by third parties, including by Medicare and private insurance. So the Secretary has the authority to exclude them.

Indeed, the statute's grammatical structure leaves no possible alternative reading. After all, the phrase "costs incurred" is followed by a parenthetical that both clarifies its meaning ("net of payments") and contains an express grant of authority ("as determined by the Secretary"). Aside from the specific statutory directions about how to treat payments from Medicaid, uninsured patients, and state and local governments, the Secretary gets to make the call.

The Association nevertheless urges us to read the words, "as determined by the Secretary," as narrowly as possible. It says that the statute empowers the Secretary to take only two actions: calculate each hospital's total costs from treating Medicaid patients and then deduct reimbursements from Medicaid and payments by uninsured

patients. According to the Association, the statute's express instruction to treat these two categories of payments as deductible means that all others are not, regardless of what the Secretary says.

There are at least two problems with this interpretation. The first is that, if the Association is right that the listing of two deductible categories means that everything else is excluded, the last sentence would be redundant because there would be no reason to specifically exclude payments by state and local governments. *See Loughrin v. United States*, 573 U.S. 351, 358 (2014) (applying the "cardinal principle" that "courts must give effect, if possible, to every clause and word of a statute" (internal quotation marks and citation omitted)). The second is that, because *states* calculate "payment adjustment[s]" and "report" them to the Secretary, 42 U.S.C. § 1396r-4(c), (j)(1), there would be nothing left for the Secretary to "determine[]." *See Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 137 S. Ct. 1002, 1010 (2017) ("Interpretation of a phrase of uncertain reach is not confined to a single sentence when the text of the whole statute gives instruction as to its meaning." (brackets and citation omitted)). *But see Tenn. Hosp. Ass'n v. Azar*, 908 F.3d 1029, 1049 (6th Cir. 2018) (Kethledge, J., concurring in judgment) (stating that there is still plenty left for the Secretary to "determine[]" even if excluding other third-party payments is beyond his power).

The bottom line is that the Secretary did exactly as instructed by "determin[ing]" which payments to deduct in calculating "costs incurred." Faced with a clear statute and no challenge to the scope of the delegation, I would end the analysis there. *See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–43, 843 n.9 (1984). *See generally Gundy v. United States*, 139 S. Ct. 2116 (2019).

———————————————