# United States Court of Appeals
## For the Eighth Circuit

_____

No. 19-1705
_____

Jillian York; Jody Bailey, on behalf of themselves and all others similarly situated.

*Plaintiffs - Appellants*

v.

Wellmark, Inc., d/b/a Wellmark Blue Cross and Blue Shield of Iowa; et al.

*Defendants - Appellees*
_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines
_____

Submitted: January 16, 2020
Filed: July 13, 2020
_____

Before SMITH, Chief Judge, LOKEN and GRUENDER, Circuit Judges.
_____

LOKEN, Circuit Judge.

The Patient Protection and Affordable Care Act ("the ACA") includes a mandate that group health plans and health insurers "provide coverage" and "not impose any cost sharing requirements for" certain types of preventive health services, including comprehensive lactation support and counseling services ("CLS"). 42

U.S.C. § 300gg-13(a)(4); Health Res. & Servs. Admin., Women's Preventive Servs. Guidelines (2016). The ACA defines cost sharing as "deductibles, coinsurance, copayments" and other expenditures required of an insured with respect to essential health benefits covered under a group health plan. 42 U.S.C. § 18022(c)(3)(A). Jillian York and Jody Bailey, members of group health plans subject to the mandate, submitted claims to be reimbursed for CLS provided by out-of-network providers. Wellmark Health Plan of Iowa, Inc., and Wellmark Blue Cross and Blue Shield of Iowa (collectively, "Wellmark") refused to cover these costs. York and Bailey commenced this putative class action, asserting breach of contract claims under Iowa law and breach of fiduciary duty claims under the Employee Retirement Income Security Act ("ERISA"), based on allegations that Wellmark violated the mandate's cost-sharing and "information and disclosure" requirements. The district court[1] dismissed the information and disclosure claims for failure to state a claim and granted Wellmark summary judgment on the cost-sharing claims. Plaintiffs appeal. Reviewing the dismissal and summary judgment orders *de novo*, we affirm. Eckelkamp v. Beste, 315 F.3d 863, 867, 870 (8th Cir. 2002) (standard of review).

## I. Factual Background.

**A.** Jillian York joined the UIChoice group health plan through her job at the University of Iowa. The plan covers preventive care for women listed in Health Resources and Services Administration ("HRSA") guidelines, which include "comprehensive lactation support services . . . during the antenatal, perinatal, and the postpartum period to ensure the successful initiation and maintenance of breastfeeding."[2] The plan's coverage manual explains that its "network of providers

---

[1]The Honorable Rebecca Goodgame Ebinger, United States District Judge for the Southern District of Iowa.

[2]The HRSA 2016 Women's Preventive Servs. Guidelines are available at https://www.hrsa.gov/womens-guidelines-2016/index.html. The ACA mandate applies to

consists of UIChoice, Wellmark Health Plan Network and Participating providers" and lists the University of Iowa Hospitals and Clinics ("UIHC") as a network provider. All other medical providers are considered "Out-of-Network" providers. The manual advises members, "To determine if a provider participates with this medical benefits plan, ask your provider, refer to our online provider directory at *Wellmark.com*, or call the Customer Service number on your ID card."

In early 2016, York chose to deliver her baby at UIHC, which she knew was a UIChoice network facility. While pregnant, she received a prenatal lactation consultation with Deborah Hubbard, a registered nurse and International Board Certified Lactation Consultant ("IBCLC") who operates UIHC's breastfeeding clinic. After birth of her son in February, York received a breast pump and literature about "breastfeeding services." When problems arose in early March, York consulted Mary Johnson, an IBCLC at UIHC, who created a personalized care plan. Johnson posited that York's son was not transferring milk due to a tongue tie and told York to "seek help elsewhere" as Johnson "had very little experience" with this issue. When problems remained at the end of March, York returned for a second consultation. York was not charged for these services and consultations.

A pediatric dentist then performed a frenectomy to correct her son's tongue tie, encouraged York to "follow up with a knowledgeable IBCLC," and referred her to Jen Pitkin. York could not find Pitkin's name in Wellmark's online provider directory, nor did the directory list "lactation consultant" or "lactation/breastfeeding services" as search options. York called Wellmark. A representative confirmed the plan covered lactation services but could not identify a CLS provider in Wellmark's network. The representative noted that Pitkin was affiliated with a facility in the network and advised York to ask whether Pitkin could bill through that facility so York could obtain in-network benefits. York instead met with Pitkin, incurred a $65 charge, and sought

services included in the HRSA guidelines. 42 U.S.C. § 300gg-13(a)(4).

reimbursement from the UIChoice plan for that charge. Wellmark denied the claim. Its final Appeal Determination Notice stated that the plan "covers lactation counseling services without cost-sharing . . . when those services are accessed through in-network providers." Because Pitkin was not "an eligible network provider," York's claim was denied.

**B.** Jody Bailey joined the Wellmark Alliance Select group health plan through her husband's employer. The coverage manual explains that the plan "relies on a preferred provider organization (PPO) network, which consists of providers that participate directly with Alliance Select and providers that participate with other Blue Cross and/or Blue Shield preferred provider organizations." All others "are considered nonparticipating" (out of network) providers. Wellmark's website lists UIHC as a PPO facility.

In 2015, Bailey visited UIHC for an exam which included a lactation consultation with Hubbard. They discussed breastfeeding education and techniques, and Hubbard helped Bailey obtain a breast pump. Hubbard gave Bailey contact information and said her services were free of charge. Bailey "walked away from that appointment with th[e] understanding that [Hubbard] was available" for future appointments. When Bailey gave birth to her son in August, Hubbard was not available because she does not work weekends. Bailey received breastfeeding assistance from her doula. Some weeks later, Bailey encountered breastfeeding difficulties and left a voicemail to schedule an appointment with Hubbard. In an exchange of voicemails, Hubbard suggested a date and time that Bailey considered "unacceptable" because it was a week away and her difficulties appeared increasingly urgent. Wellmark's online directory did not list "lactation," "breastfeeding," "IBCLC," or any other relevant provider type or specialty. Bailey called Wellmark. A representative said there were no CLS network providers.

-4-

Bailey then met with lactation consultant Kimberly Hendricks, who charged $115. Bailey did not seek reimbursement for this charge. Months later, she encountered breast pump problems and again consulted Hubbard who demonstrated pumping and advised how to resolve the problems. Bailey was not charged for this consultation. Bailey called Wellmark again some six months later and learned the 180-day period for filing a claim for reimbursement of Hendricks's $115 charge had expired. The Wellmark representative could not identify any CLS network providers and stated that Wellmark generally did not cover services by non-doctors.

## II. Procedural History.

In December 2016, York and Bailey filed this putative class action, asserting ERISA claims for failure to pay plan benefits, breach of fiduciary duty, and co-fiduciary liability, 29 U.S.C. §§ 1132(a)(3), 1104(a), and 1105(a); claims of sex discrimination in violation of § 1557(a) of the ACA, 42 U.S.C. § 18116(a); and state law claims for breach of contract and unjust enrichment. Wellmark moved to dismiss the Complaint. Plaintiffs conceded that Bailey's breach of contract claim was preempted by ERISA and that York could not assert an ERISA claim because her plan was a "governmental plan" under 29 U.S.C. § 1003(b)(1). The district court dismissed the claims for co-fiduciary liability, sex discrimination, and unjust enrichment. See York v. Wellmark, Inc., No. 4:16-cv-00627, 2017 WL 11261026, at *13-20 (S.D. Iowa Sept. 6, 2017). Those claims are not at issue.

The district court also dismissed York's breach of contract claim and Bailey's breach of fiduciary duty ERISA claim to the extent those claims were based on alleged ACA "information and disclosure requirements." However, the court ruled, Plaintiffs stated plausible claims for relief based on alleged improper cost-sharing. After discovery, the parties filed cross-motions for summary judgment. The district court granted summary judgment in favor of Wellmark, concluding undisputed facts established that Plaintiffs received CLS without cost sharing from Wellmark's network

providers, and therefore Wellmark could deny coverage for out-of-network CLS without violating the ACA's cost-sharing prohibition. Plaintiffs appeal these aspects of the district court's dismissal and summary judgment Orders. Plaintiffs' initial brief on appeal presents the following rulings for our review:

-- With respect to the dismissal Order, the district court's holding that "Plaintiffs' allegations pertaining to information and disclosure requirements under the ACA -- that Wellmark erected 'administrative barriers' to certain information and failed to provide a 'separate list' of lactation counseling providers -- are dismissed for failing to state a claim."

-- With respect to the summary judgment Order, the district court's holdings that "The undisputed factual record before the Court shows Plaintiffs had access to in-network providers of [CLS] and in fact received [CLS] from those providers. Defendant Wellmark [] thus satisfied its obligation to have in-network providers of [CLS] and could impose cost-sharing on lactation support and counseling services Plaintiffs received out-of-network."

## III. Dismissal Order Issues.

Plaintiffs appeal the dismissal of claims that Wellmark violated cost-sharing and information and disclosure requirements of the ACA mandate. In reviewing dismissal order issues under Rule 12(b)(6), we take the facts alleged in the Complaint as true and draw all reasonable inferences in Plaintiffs' favor. Meiners v. Wells Fargo & Co., 898 F.3d 820, 821 (8th Cir. 2018). To survive, the Complaint must allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

The parties agree that the ACA mandate provides no private right of action. Rather, the Complaint alleged that Plaintiffs may enforce provisions of the ACA governing CLS benefits "through Incorporation by Reference in [Wellmark] Plan Documents." As York was a member of a UIChoice group health plan not governed by ERISA, her breach of contract claim is governed by and construed in accordance with the laws of the State of Iowa, as the coverage manual expressly stated. Under Iowa law, parties subject to a statute "are presumed to contract in reference to the existing law, which becomes a part of the contract." In re Mt. Pleasant Bank & Tr. Co., 426 N.W.2d 126, 134 (Iowa 1988); see 11 Richard A. Lord, Williston on Contracts § 30:19 (4th ed. 2012). Wellmark has not raised the issue, so we assume without deciding that this principle applies to York's state law claims.[3]

Plaintiffs first argue the district court erred in dismissing their claims that Wellmark violated "information and disclosure requirements" in the preventive health services mandate. The Complaint listed "administrative barriers" to accessing CLS benefits from Wellmark -- "inconsistent guidance" from customer service representatives, "inaccurate information" given to insureds, and failure to provide a list of in-network providers by mail, through customer representative phone consultation, or through Wellmark's website. The Complaint recounted the struggles of York and Bailey to identify a lactation consultant through phone calls and Wellmark's website. Plaintiffs argue these allegations state a facially plausible violation of the ACA's preventive health services mandate.

---

[3]Plaintiffs fail to address how York's information and disclosure claims would be resolved under Iowa law, either in an administrative proceeding under the State's insurance laws or by a state court. Plaintiffs simply present York's claims as if they were based on a federal private right of action the ACA does not provide. This alone is reason to affirm the district court's dismissal Order as to York. But the district court addressed the merits of that claim, so we will also.

In dismissing these claims, the district court accurately noted that neither the statutory mandate nor its implementing regulations requires the disclosure of information -- including a list of providers -- or prohibits "administrative barriers" or "inconsistent guidance." Rather, the mandate provides that group health plans and health insurance issuers "shall, at a minimum provide coverage for and shall not impose any cost sharing requirements for" preventive health services. 42 U.S.C. § 300gg-13(a). The mandate addresses only "coverage" and "cost sharing," whereas related sections and regulations implementing other health care statutes address the information plans must disclose to their participants. See 42 U.S.C. §§ 300gg-15, 300gg-15a, 18031(e)(3); 29 C.F.R. § 2590.715-2715. Likewise, the mandate's implementing regulations do not include information and disclosure requirements. See 29 C.F.R. § 2590.715-2713. Plaintiffs' initial brief, like the Complaint, contains lengthy assertions regarding "fundamental, immutable constructs of insurance coverage" and the objectives, purpose, and underlying policies of the ACA. But "vague notions of a statute's basic purpose" cannot "overcome the words of its text regarding the *specific* issue under consideration." Great-W. Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 220 (2002) (quotation omitted). "[I]t frustrates rather than effectuates legislative intent simplistically to assume that whatever furthers the statute's primary objective must be the law." Rodriguez v. United States, 480 U.S. 522, 526 (1987).

Plaintiffs argue the district court erred in dismissing their claims that Wellmark failed to provide a "separate list" of lactation counseling providers. According to Plaintiffs, that is a failure to provide "coverage." We reject this argument because it is contrary to the plain language of the statute, which we enforce according to its terms. See King v. Burwell, 135 S. Ct. 2480, 2489 (2015). Both ERISA and the ACA define "health insurance coverage" as "benefits consisting of medical care (provided directly, through insurance or reimbursement, or otherwise and including items and services paid for as medical care) under any hospital or medical service policy or certificate, hospital or medical service plan contract, or health maintenance organization contract

offered by a health insurance issuer." 29 U.S.C. § 1191b(b)(1); 42 U.S.C. § 300gg-91(b)(1). "[W]e must read the words [in a statute] in their context and with a view to their place in the overall statutory scheme" because "[o]ur duty, after all, is to construe statutes, not isolated provisions." King, 135 S. Ct. at 2489 (quotations omitted). Thus, "coverage" under the ACA refers to "the type or amount of benefits or services covered under a plan," not "the hassle associated with utilizing those services." Hartford Healthcare Corp. v. Anthem Health Plans, Inc., No. 3:17-CV-1686 (JCH), 2017 WL 4955505, at *7-9 (D. Conn. Nov. 1, 2017); contra Briscoe v. Health Care Serv. Corp., 281 F. Supp. 3d 725, 733 (N.D. Ill. 2017).

Like the district court, we do not find persuasive a 2015 Frequently Asked Question ("FAQ") issued by the Departments of Labor, the Treasury, and Health and Human Services stating that "plans and issuers [are] required to provide a list of the lactation counseling providers within th[eir] network."[4] As the district court explained, this FAQ relied on regulations promulgated under other federal statutes regulating group health plans and issuers, including disclosure requirements under ERISA. See 29 C.F.R. § 2520.102-3(j)(3), implementing 29 U.S.C. § 1022. But these other regulations provide no authority for prescribing substantive disclosure requirements under the ACA and its implementing regulations, which contain no such requirements. To validly impose new substantive requirements under the ACA requires proceeding by full notice and comment rulemaking under the Administrative Procedure Act, 5 U.S.C. § 553. See Children's Health Care v. Centers for Medicare & Medicaid Servs., 900 F.3d 1022, 1025-27 (8th Cir. 2018); Children's Hosp. of the King's Daughters, Inc. v. Azar, 896 F.3d 615, 621-23 (4th Cir. 2018). We conclude the term "coverage" in the ACA mandate did not require Wellmark to provide a separate list of its in-network lactation counseling providers.

---

[4] FAQs About Affordable Care Act Implementation (Part XXIX) and Mental Health Parity Implementation at 2 (Oct. 23, 2015), available at https://www.dol.gov/sites/default/files/ebsa/about-ebsa/our-activities/resource-center/faqs/aca-part-xxix.pdf.

Bailey seeks relief under a group health plan governed by ERISA, which preempts state law remedies. Although the ACA does not impose "information and disclosure requirements," ERISA provides a private right of action for an alleged breach of a plan administrator's duty "to distribute written notices that are sufficiently accurate and comprehensive to reasonably apprise plan participants and beneficiaries of their rights and obligations under the plan." CIGNA Corp. v. Amara, 563 U.S. 421, 443 (2011) (statutory quotation omitted). But Bailey did not assert a breach of that duty, no doubt because it would be defeated by her failure to present a timely claim for relief under the Wellmark Alliance Select plan. Rather, her claim is that the ACA mandate and its implementing regulations impose a categorical fiduciary duty on the administrators of group health plans governed by ERISA to publish a "separate list" of lactation counseling providers. We agree with the district court that, under regulations implementing an ERISA fiduciary's disclosure obligations, "the health plan need only provide a list of network providers and describe when out-of-network services are covered -- not specify which of those providers offer certain services such as lactation counseling." York, 2017 WL 11261026 at *12, citing 29 C.F.R. § 2520.102-3(j)(3). Thus, Bailey's information and disclosure claim under ERISA, like York's claim under Iowa law, failed to state a claim on which relief may be granted. The district court's Order dismissing these claims is affirmed.

## IV. Summary Judgment Issues.

The ACA mandate's implementing regulations provide that a group health plan or issuer may deny coverage or impose cost sharing for items and services "performed by an out-of-network provider" if the plan or issuer "ha[s] in its network a provider who can provide an item or service." 29 C.F.R. § 2590.715-2713(a)(3). In the district court, Plaintiffs argued this required Wellmark to establish "a network of lactation consultants" and recognize them as an eligible provider type before it could refuse to pay claims for CLS provided by out-of-network providers like Pitkin and Hendricks.

On appeal, Plaintiffs argue the ACA's CLS coverage mandate required that Wellmark "expand its networks to include lactation consultants as eligible provider types."

We disagree. Neither the ACA nor its implementing regulations support this contention. The ACA does not use the term "network of providers."[5] An implementing regulation provides that a plan or issuer may deny coverage or impose cost sharing for items and services "performed by an out-of-network provider" if the plan or issuer "ha[s] in its network a provider who can provide an item or service." 29 C.F.R. § 2590.715-2713(a)(3). The terms "network" and "in-network provider" are not defined and must be given their customary meaning in the group health insurance industry -- plan provisions by which a group health plan issuer "contract[s] with a network of medical care providers to offer services to plan participants at discounted contract prices." Geddes v. United Staffing All. Emp. Med. Plan, 469 F.3d 919, 922 (10th Cir. 2006), cert. denied, 554 U.S. 932 (2008); see Transparency in Coverage, Proposed Rules of the Dep'ts of the Treasury, Labor, and Health & Human Servs., 84 Fed. Reg. 65,464, 65,514 (Nov. 27, 2019) ("In-network provider means a provider that is a member of the network of contracted providers established or recognized under a participant's or beneficiary's group health plan or health insurance coverage.").

To adopt Plaintiffs' interpretation would construe this regulation as requiring substantive changes to contracts that state-regulated group health insurers negotiate with medical providers. But nothing in the regulation suggests that it required Wellmark to provide a "network of lactation consultants" even if Iowa does not

---

[5]Elsewhere, the ACA defines the term "network plan" as "health insurance coverage of a health insurance issuer under which the financing and delivery of medical care (including items and services paid for as medical care) are provided, in whole or in part, through a defined set of providers under contract with the issuer." 42 U.S.C. § 300gg-91(d)(10). But the "network" referenced there is the participating employers provided health insurance coverage by a plan issuer, not the "set of providers under contract with the issuer." See id. § 300gg-1(c)(1).

-11-

separately license or certify this type of medical provider.[6]  Rather, the regulation asks whether Wellmark has "in its network a provider who can provide [that] item or service."  As previously noted, to promulgate a regulation interpreting the ACA as including this type of substantive authority would require full notice and comment rulemaking.  See Children's Health Care, 900 F.3d at 1025-27.

Plaintiffs acknowledged in the district court that the IBCLCs at UIHC are in Wellmark's network and provided CLS to York and Bailey in the antepartum and postpartum periods.  As the district court explained in granting summary judgment dismissing Plaintiffs' cost-sharing claims:

> [T]he undisputed facts show York and Bailey could receive (and in fact received) lactation support and counseling services at all relevant points during their pregnancies, during their inpatient stays, and after their discharge from the hospital.  They received those services without charge from Certified Lactation Consultants at UIHC, an in-network facility seven miles from York's home and ten to fifteen minutes from Bailey's. . . . Wellmark's decision not to credential lactation consultants, without more, does not prove Wellmark lacked in-network providers capable of providing comprehensive lactation services.

York v. Wellmark, Inc., No. 4:16-cv-00627-RGE-CFB, 2019 WL 1493715, at *5 (S.D. Iowa Feb. 28, 2019).  Plaintiffs do not claim that the services fell short of the medical care the guidelines require or that they were charged for those services.

Plaintiffs argue that Wellmark cannot place the burden on insureds to "hunt down" CLS providers who are "theoretically but not actually available."  But the mandate's implementing regulation only required Wellmark to "have in its network a

---

[6]In denying York's claim, Wellmark explained that "Iowa state law currently does not have a licensure or certification process for lactation counselors."

provider who can provide an item or service" in order to deny or impose cost sharing for out-of-network services. 29 C.F.R. § 2590.715-2713(a)(3). We agree with the district court that difficulty in scheduling an appointment with a provider does not establish an insurer's noncompliance with that requirement. Moreover, the summary judgment record established that Wellmark provided York and Bailey qualified, available in-network providers of CLS.

We therefore conclude the district court did not err in granting summary judgment dismissing Plaintiffs' cost-sharing claims. Of course, York and Bailey as group health plan participants could have asserted either state law or ERISA claims under their respective plans alleging that the difficulties they encountered resulted in CLS benefits being improperly denied. But those claims were not asserted in this lawsuit. Accordingly, the judgment of the district court is affirmed.

_____